UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BRM TRADES, LLC,                              :
                          Plaintiff,          :
v.                                            :          **OPINION AND ORDER**
                                              :
ALL-WAYS FORWARDING INT'L, INC.,              :          21 CV 7151 (VB)
and DRE HEALTH CORPORATION,                   :
                          Defendants.         :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff BRM Trades, LLC ("BRM"), brings this action against defendants All-Ways

Forwarding Int'l, Inc. ("All-Ways"), and DRE Health Corporation ("DRE") for breach of

contract and fraud.

    Now pending are All-Ways's and DRE's motions to dismiss the amended complaint

under Rules 12(b)(1), 12(b)(2), and 12(b)(6).  (Docs. ## 22, 25).

    For the foregoing reasons, the motions are GRANTED IN PART and DENIED IN

PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1333.

**BACKGROUND**

    The parties have submitted memoranda of law and declarations with exhibits, which,

together with the allegations in BRM's amended complaint, reflect the following factual

background.

I.      Bill of Lading and Shipment of the Goods

    BRM, a trading company, alleges that on an unspecified date in 2021, DRE, a medical

supply manufacturer, contracted with All-Ways, a common carrier, for the delivery of sixty-eight

containers of medical gloves that DRE purchased from a manufacturer in China (the "Goods"),

pursuant to a bill of lading issued by All-Ways (the "Bill of Lading").[1]

The Bill of Lading binds the "Merchant" to (i) all the terms on the front side of the Bill of Lading (B/L Front); (ii) the terms and conditions typically printed on the reverse side of the Bill of Lading and published with the FMC (B/L Terms); and (iii) any other applicable provisions of the tariff that All-Ways publishes with the FMC.[2]  The Bill of Lading qualifies that "[i]n the case of inconsistency between this Bill of Lading and the applicable tariff or the terms and conditions of service, this Bill of Lading shall prevail."  (Id. at ECF 27 ¶ 18).  The Bill of Lading defines a "Merchant" as the "shipper, consignor, consignee, exporter, importer, the holder of the Bill of Lading and/or the receiver or the owner of the Goods."  (Id. at ECF 22 ¶ 1).

The front side of the Bill of Lading contains an arbitration clause providing that

---

[1]     The parties dispute the operative bill or bills of lading under which the Goods were shipped, but every version of the bill of lading in the record contains or incorporates by reference identical terms.  In addition, BRM proffers ten bills of lading that purportedly govern different containers in which the Goods were located, but the terms on the face of each of those bills of lading are the same.  (See Doc. #34-1 ("B/L Front")).  Finally, every preferred bill of lading in the record contains the same terms and conditions; while those terms and conditions are usually printed on the reverse side of the bill of lading, BRM attached them for the Court's review as an exhibit in opposition to defendants' motions to dismiss.  (Doc. #34-2 at ECF 22–27 ("B/L Terms")).  As discussed below, these terms and conditions are incorporated into the tariff that All-Ways must file with the Federal Maritime Commission ("FMC").

Accordingly, for ease of reference, all references to the "Bill of Lading" comprise (i) the terms on B/L Front and (ii) the terms in B/L Terms.  All quotations from the front side of the Bill of Lading will cite to B/L Front. All quotations from the terms and conditions on the reverse side of the Bill of Lading will cite to B/L Terms.

"ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[2]     46 U.S.C. § 40501 mandates that a common carrier like All-Ways "keep open to public inspection in an automated tariff system, tariffs showing all its rates, charges, classifications, rules, and practices between all points or ports on its own route and on any through transportation route that has been established."  The tariffs must be filed with the FMC and must include a range of information regarding common carrier rates, including "sample copies of any bill of lading."  Id. § 40501(b)(5).

"dispute(s) under the contract evidenced [by] this [Bill of Lading] shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in New York."  (B/L Front).

The terms and conditions filed as part of All-Ways's tariff contain the following choice-of-law and forum-selection clause:

> Any claim or dispute arising under this Bill of Lading shall be determined exclusively according to the laws of the United States and the Merchant agrees that any suits against the Carrier shall be brought in the United States District Court for the Southern District of New York, which shall have exclusive jurisdiction.

(B/L Terms at ECF 27 ¶ 15).  The terms and conditions do not include the arbitration clause printed on the face of the Bill of Lading.

II.   All-Ways's Maritime Lien Over the Goods and BRE's Purchase Agreement

BRM contends that in or around July 2021, All-Ways asserted a maritime lien over the Goods once they arrived in the United States, purportedly pursuant to the Bill of Lading. According to BRM, All-Ways asserted the lien in part due to DRE's failure to pay outstanding invoices owed to All-Ways, and All-Ways thus made assurances to both BRM and DRE that it would release the Goods once DRE paid those invoices.

BRM alleges that in light of DRE's purported inability to pay All-Ways, BRM entered into a purchase agreement with DRE on July 30, 2021, by which BRM would pay DRE approximately $3 million dollars in exchange for BRM receiving title to the Goods (the "Purchase Agreement").  The Purchase Agreement provides that "[t]itle will be transferred to BRM immediately upon [DRE's] receipt of payment."  (Doc. #13-1 ("Purchase Agreement") at ECF 2).  According to BRM, it executed the Purchase Agreement in reliance on representations from DRE that DRE would use the proceeds from the Purchase Agreement to pay its invoices owed to All-Ways, and representations from All-Ways that it would release the Goods to BRM

once it received payment from DRE.

The Purchase Agreement incorporates by reference additional terms and conditions published on DRE's website,[3] including a forum-selection clause providing that the "state or federal courts of Jackson county, state of Missouri, shall have exclusive jurisdiction" over "any and all disputes in connection with the agreement, or with regard to further agreements arising or resulting from or in connection with said agreement." (Purchase Agreement Terms at ECF 21 ¶ 20.1). The Purchase Agreement further provides that it "shall be governed and construed in accordance with the laws of the State of Missouri." (Id. ¶ 20.2).

III.      Alleged Breaches of Contracts and Fraudulent Representations

BRM contends that All-Ways and DRE each defrauded it and breached their respective contracts with it. BRM claims that upon executing the Purchase Agreement, it became an "owner of the Goods" under the definition of "Merchant" in the Bill of Lading, and that All-Ways, in turn, breached its contractual duty to BRM under the Bill of Lading by selling the Goods to third parties, despite All-Ways's assurances that it would release the Goods to BRM once it received payment from DRE. BRM alleges DRE breached the terms of the Purchase Agreement by refusing to direct All-Ways to release the Goods to BRM and then continuing to assert ownership over the Goods, despite DRE's assurances to the contrary.

On August 20, 2021, DRE filed a lawsuit against BRM in the Circuit Court of Jackson

---

[3]      The exhibit that BRM defines as the "Purchase Agreement" (Doc. #13-1) includes a "Purchase Order" signed by executives from BRM and DRE, dated July 29, 2021, as well as an "invoice," not signed by any party, but dated July 30, 2021. The invoice contains the link to DRE's website for the additional terms and conditions governing the purchase, including the Missouri forum-selection clause. DRE attaches an identical copy of those terms and conditions as an exhibit in support of its motion to dismiss. (Doc. #24-1 at ECF 10–21 ("Purchase Agreement Terms")). In light of BRM's adoption of the invoice as part of the Purchase Agreement, the Court presumes that the Purchase Agreement includes the Purchase Agreement Terms.

County, Missouri, related to the Goods and the Purchase Agreement (the "Missouri Action").

(Doc. #24-1).  On October 12, 2021, BRM removed the Missouri Action to the U.S. District

Court for the Western District of Missouri based on diversity jurisdiction.  (Doc. #24-2).  On

October 19, 2021, BRM filed an answer as well as affirmative defenses and counterclaims

against DRE, including counterclaims for breach of the Purchase Agreement and fraud based on

DRE's alleged representations regarding the release of the Goods.  (Doc. #24-3).

On August 24, 2021, BRM commenced the instant action by filing a complaint against

All-Ways only, for breach of contract and fraud based on All-Ways's lien over and subsequent

sale of the Goods.  On October 8, 2021, BRM amended its complaint to add DRE as a defendant

for fraud and breach-of-contract claims that are substantially similar to the counterclaims BRM

filed against DRE in the Missouri Action.

## DISCUSSION

I.    Subject Matter and Personal Jurisdiction

  A.    Standard of Review

    1.    Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such

limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston,

Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[4]  "A case is properly

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already, LLC, 663 F.3d 89,

94 (2d Cir. 2011).  The party invoking the court's jurisdiction bears the burden of establishing

---

[4]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).  When a defendant

moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should

consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896

F.2d 674, 678 (2d Cir. 1990).

    In deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the court

"must accept as true all material facts alleged in the complaint and draw all reasonable inferences

in the plaintiff's favor."  Conyers v. Rossides, 558 F.3d at 143.  But "argumentative inferences

favorable to the party asserting jurisdiction should not be drawn."  Buday v. N.Y. Yankees

P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  When a factual challenge to the

court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact

issues by referring to evidence outside of the pleadings, such as affidavits."  Zappia Middle E.

Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

    2.    Rule 12(b)(2)

    On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the

"plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  In re

Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  Prior to conducting

discovery, plaintiff may defeat a motion to dismiss "by pleading in good faith legally sufficient

allegations of jurisdiction."  Ball v. Matallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d

Cir. 1990).  "At that preliminary stage, the plaintiff's prima facie showing may be established

solely by allegations."  Id.  A plaintiff can also make this showing through its own affidavits and

supporting materials containing an averment of facts that, if credited, would suffice to establish

jurisdiction over a defendant.  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.

2001).  When there has been no hearing on the merits, "all pleadings and affidavits must be

construed in the light most favorable to [the plaintiff] and all doubts must be resolved in . . .

[the] plaintiff's favor." Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d

1039, 1043 (2d Cir. 1990).  "Nevertheless, conclusory allegations lacking factual specificity do

not satisfy this burden." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 393 (S.D.N.Y.

2009), aff'd, 387 F. App'x 72 (2d Cir. 2010) (summary order).

     B.    Subject Matter Jurisdiction

     Defendants argue the amended complaint must be dismissed because the Court lacks

subject matter jurisdiction.

     The Court disagrees.  BRM has sufficiently shown that the Court enjoys subject matter

jurisdiction on two grounds.

     First, the Court may exercise admiralty jurisdiction because BRM's claims arise, at least

in part, out of the Bill of Lading, which is a paradigmatic "maritime contract" that "serves as the

"contract for carriage" of goods by sea.  Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 19 (2004).

And when, as here, the bill of lading's very "purpose is to effectuate maritime commerce," the

fact that the instant dispute did not arise until the Goods arrived on land is of no consequence.

See id; see also Orient Express Container Co. v. Verde Textile USA Corp., 430 F. Supp. 3d 1, 3

(S.D.N.Y. 2019) (admiralty jurisdiction existed over claim by common carrier "seeking a judicial

declaration that [it] has the authority under the terms of its contract to exercise its maritime line,

sell the goods at issue, and use the proceeds to recoup the expenses it has incurred").[5]

---

[5]     Because BRM's remaining claims—the fraud claim against All-Ways, as well as the
breach-of-contract and fraud claims against DRE—all arise from the "same common nucleus of
operative facts" as BRM's breach-of-contract claim against All-Ways, which itself arises out of
the Bill of Lading, the Court may exercise supplemental jurisdiction over those claims as well.
See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); see also 28 U.S.C.
§ 1367(a).

Second, the Court may independently exercise diversity jurisdiction because BRM has sufficiently established that the parties are citizens of different states and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332; (Doc. #34) (declaring that DRE is a citizen of Missouri, All-Ways is a citizen of New Jersey, and BRM is a citizen of New York).

Accordingly, the Court must deny the motions to dismiss for lack of subject matter jurisdiction.

C.      Personal Jurisdiction

Next, defendants argue BRM's claims must be dismissed because the Court lacks personal jurisdiction over them.

The Court disagrees.

In determining personal jurisdiction over a party, the Court must first evaluate whether that party consented to personal jurisdiction by agreeing to a forum-selection clause.  MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d 738, 746–47 (S.D.N.Y. 2020).  Under federal law, a party seeking to enforce a forum-selection clause must demonstrate "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause."  Tropp v. Corp. of Lloyd's, 385 F. App'x 36, 37 (2d Cir. 2010) (summary order).

In the absence of a forum-selection clause, the Court must evaluate personal jurisdiction under New York law based either on general jurisdiction or specific jurisdiction.  MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d at 746–47.

To determine whether specific personal jurisdiction exists over a nondomiciliary defendant, the Court engages in a two-step inquiry.  First, the Court determines whether the

forum state's long-arm statute permits the exercise of jurisdiction over the defendant.  Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).  "[T]he second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution."  Id. at 164.

The Court will address personal jurisdiction as to each defendant in turn.

### 1.   All-Ways

Plaintiff has sufficiently shown that All-Ways consented to personal jurisdiction by agreeing to the forum-selection clause in its Bill of Lading.  The clause includes mandatory language that all "suits" under the terms of the Bill of Lading filed by the "Merchant," which includes an owner of the Goods like BRM, against the "Carrier," which is All-Ways, "shall" be subject to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York.  (B/L Terms at ECF 27 ¶ 15).  Moreover, All-Ways cannot reasonably assert that, as the drafter of the clause, it was not apprised of its contents.

Rather, All-Ways disputes whether BRM—as a "downstream," third-party buyer of the Goods—could, in fact, be a party to the Bill of Lading and thus be "subject to the forum-selection clause."  (Doc. #27 at 11).  However, the single case upon which All-Ways relies is inapplicable—it concerned a common carrier's ability to bind a third party to another carrier's bill of landing, not a third-party buyer like BRM that falls into the "Merchant" definition of a common carrier's bill of lading seeking to bind that common carrier to its own terms.  See MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d at 753.  To the contrary, "when a third-party who falls within a Merchant Clause sues on a bill of lading, the third-party in effect accepts the bill of lading and becomes a party to the contract."  In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 72 (S.D.N.Y.),  aff'd sub nom. Chem One, Ltd. v. M/V Rickmers

Genoa, 502 F. App'x 66 (2d Cir. 2012) (summary order).

        2.     DRE

DRE, on the other hand, did not consent to personal jurisdiction by agreeing to a forum-selection clause—the claims against DRE arise out of the Purchase Agreement, which does not contain the Bill of Lading's forum-selection clause.  But BRM has nevertheless shown that DRE sufficiently availed itself of New York's laws and benefits with respect to shipping the Goods, such that the Court may exercise its specific jurisdiction over DRE.

That is, DRE's agreement to sell and ship of millions of dollars worth of medical gloves into New York State constitutes sufficient purposeful enjoyment "of the benefits of conducting business in New York" such that the Court may exercise personal jurisdiction over DRE under Section 302(a)(1) of the New York Civil Practice Law and Rules.  See Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 7 N.Y.3d 65, 71–72 (2006) (Section 302(a)(1) is a "single act statute" under which "proof of one transaction in New York" may be sufficient to justify the exercise of jurisdiction over a defendant that "never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

Moreover, "in actually [attempting to] send[] items to New York, there can be no doubt that [DRE's] conduct was purposefully directed toward the forum state" such that DRE had sufficient "minimum contacts" with the forum state under the Due Process Clause, and asserting personal jurisdiction over DRE would not offend "traditional notions of fair play and substantial justice."  See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d at 171–73.

Accordingly, the Court must deny the motions to dismiss for lack of personal jurisdiction.

II.    <u>All-Ways's Motion to Compel Arbitration</u>

    A.    <u>Motion to Dismiss Treated as Motion to Compel Arbitration</u>

Depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration.  <u>See</u> <u>Wabtec Corp. v. Faiveley Transp. Malmo AB</u>, 525 F.3d 135, 139–140 (2d Cir. 2008).  The motion must either "explicitly or implicitly ask[ ] the court to order arbitration."  <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 230 (2d Cir. 2016).  When a movant manifests "an intent . . . to compel arbitration," district courts may "treat[ ] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration."  <u>Id</u>.

Here, All-Ways's motion to dismiss manifests an intent to compel arbitration.  Although All-Ways argues BRM was never a party to the Bill of Lading and therefore cannot sue for violations of its terms and conditions, it also argues, in the alternative, that "even if the Bill of Lading is somehow applicable to this action, arbitration must be compelled, and this case must not continue in the Southern District of New York, pursuant to the Bill of Lading's mandatory arbitration clause."  (Doc. #27 at 11).  Accordingly, the motion to compel standard applies to All-Ways's motion to dismiss based on the Bill of Lading's arbitration clause.

    B.    <u>Standard of Review</u>

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts—including maritime contracts like bills of lading—"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §§ 1, 2.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  <u>Dean Witter Reynolds, Inc. v.</u>

Byrd, 470 U.S. 213, 218 (1985).

"In the context of motions to compel arbitration brought under the [FAA] . . . , the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).  Therefore, the Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d at 229.

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary order).  "This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." Id.  Once that is established, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).  The party opposing arbitration "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).  If a party raises a genuine issue of fact as to the existence of an agreement to arbitrate, the court must "proceed summarily to the trial thereof." 9 U.S.C. § 4.

C.    Motion to Compel

All-Ways argues that if BRM is entitled to sue All-Ways under the Bill of Lading, there is no genuine issue of fact that arbitration must be compelled with respect to all of BRM's claims under that Bill of Lading.

The Court agrees.

1.    Legal Standard

In reviewing a motion to compel arbitration respecting non-federal statutory claims, a court must determine whether the parties agreed to arbitrate, and, if they did, the scope of that agreement.  ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28–29 (2d Cir. 2002).  Consistent with the strong federal policy favoring arbitration as an alternative means of dispute resolution, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitrability.  In doing so, a district court "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019).

The federal policy favoring arbitration "requires [courts] to construe arbitration clauses as broadly as possible."  In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011).  "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted."  Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987).  To determine if a dispute falls within the scope of an arbitration agreement, a court "should classify the particular clause as either broad or narrow."  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004).

An arbitration clause is "broad" when it designates disputes arising "in connection with" or "relating to" the contract as arbitrable.  See Oldroyd v. Elmira Sav. Bank, FSB, 143 F.3d 72, 76 (2d Cir. 1998).  When "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).

"Narrow" arbitration clauses, on the other hand, confine arbitrable issues to those "arising under" the contract containing the arbitration provision (or "at most" the substantive "equivalent" thereof), but only if such a narrow phrase is unaccompanied by broader phrases such as "related to" or "in connection with" typically found in arbitration clauses.  ACE Cap. Re Overseas LTD. v. Cent. United Life Ins. Co., 307 F.3d at 32–33.  When the arbitration clause is narrow, arbitration can be compelled only with respect to issues entailing a literal interpretation or performance of the contract, and any collateral matter will generally be ruled beyond its purview.  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172.

2.    Analysis

a.    Agreement to Arbitrate

Here, All-Ways has satisfied its initial burden of showing that BRM agreed to be bound by the arbitration clause in the Bill of Lading as a matter of federal law.[6]  That is, BRM does not dispute that the arbitration clause is printed clearly on the face of each of the bills of lading.  Accordingly, "by filing a lawsuit for damages [as a 'Merchant'] under the bill of lading, [BRM] has accepted the terms of the bill of lading" as a matter of federal common law, "including the unnegotiated [arbitration clause]."  Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp.

---

[6]       "A federal court sitting in admiralty must apply federal choice of law rules."  State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 414 (2d Cir. 1990).  "Under federal choice-of-law rules, when a maritime contract contains a choice-of-law clause, the law chosen by the parties governs . . . unless (1) that jurisdiction has no substantial relationship to the parties or the transaction or (2) that jurisdiction's law conflicts with the fundamental purposes of maritime law."  Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 127–28 (S.D.N.Y. 1997), aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc., 161 F.3d 115 (2d Cir. 1998).  Here, the Bill of Lading provides that any claims arising thereunder "shall be determined exclusively according to the laws of the United States."  (B/L Terms at ECF 27 ¶ 15).  In such circumstances, absent further agreement on whether the law of any given state within the United States governs, the Court "look[s] to common law principles of contract formation and interpretation."  In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d at 71.

2d at 125.  Put another way, when BRM "sues on the bills of lading, which explicitly incorporate the . . . arbitration clause," it "cannot pick and choose among the clauses of the bill of lading, selecting those that impose duties on [All-Ways] and impose liability while avoiding those that establish the forum where that liability is to be determined."  Thyssen, Inc. v. M/V Markos N, 1999 WL 619634, at *6 (S.D.N.Y. Aug. 16, 1999), aff'd sub nom. Thyssen, Inc. v. Calypso Shipping Corp., 310 F.3d 102 (2d Cir. 2002).

BRM contends the "potentially contradictory" forum-selection clause in the terms and conditions of the Bill of Lading—mandating that any "suits" regarding the Bill of Lading be brought in the Southern District of New York—thwarts any "clear" intent of the parties to arbitrate.  (Doc. #33 at ECF 21).  But such a construction is not appropriate when, as here, the two at-issue clauses can be read to complement each other.  See Celltrace Commc'ns Ltd. v. Acacia Rsch. Corp., 2016 WL 3407848, at *3–4 (S.D.N.Y. June 16, 2016) (holding "the best way to construe [an] [a]greement [is to] give full meaning and effect to all of its provisions" and "avoid interpretations of contractual language that render meaningless or useless certain terms of the contract"), aff'd in relevant part, 689 F. App'x 6 (2d Cir. 2017) (summary order).

Specifically, the arbitration clause provides that all "dispute(s) under the contract evidenced [by] this [Bill of Lading] shall be settled by arbitration" (B/L Front), and the forum-selection clause provides that the Southern District of New York "shall have exclusive jurisdiction" over "any suits [by the Merchant] against the Carrier."  (B/L Terms at ECF 27 ¶ 15).  In light of the forum-selection clause's restriction of the Court's exclusive jurisdiction to "suits," as opposed to disputes, actions or proceedings, the only construction that would give full meaning and effect to both provisions is that All-Ways and BRM "are required to arbitrate their disputes, but that to the extent [BRE] files a suit in court in [the Southern District of] New

York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—[All-Ways] will not challenge either jurisdiction or venue."  See Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 285 (2d Cir. 2005).

Moreover, even if the two clauses are conflicting, the Bill of Lading terms and conditions specify that "[i]n the case of inconsistency between [the] Bill of Lading and the applicable tariff or the terms and conditions of service, the Bill of Lading shall prevail."  (B/L Terms at ECF 27 ¶ 18).  Accordingly, the arbitration clause, which is printed on the face of the Bill of Lading itself, would control.

BRM also contends the arbitration clause is invalid because the clause was not included in the sample bill of lading that All-Ways filed with the FMC as part of its tariff, which, according to BRM, "[has] the force of law" and cannot be varied or enlarged by contract.  (Doc. #32 at 10).

However, the "stringent rule" BRM seeks to impose upon All-Ways regarding the binding effect of a tariff's contents "is designed to prevent rate discrimination," and thus applies to terms and conditions that affect rates, not domestic arbitration or forum-selection clauses.  See Ins. Co. of N. Am. v. S/S Am. Argosy, 732 F.2d 299, 303 (2d Cir. 1984).  Here, BRM "has not demonstrated how enforcement of the disputed arbitration clauses would effectively change the applicable filed rate[s] or result in a judicial determination of the reasonableness of [those] rate[s]."  Qwest Corp. v. ZiaNet, Inc., 2005 WL 8163580, at *5 (D.N.M. Aug. 31, 2005) (enforcing arbitration clause in service agreement notwithstanding clause's absence in communication carrier's filed tariff governed by "filed tariff" doctrine).  Indeed, BRM has failed to cite—nor has the Court uncovered on its own—any authority supporting the proposition that the "filed-rate" or "filed-tariff" rule upon which BRM relies should extend beyond provisions

16

affecting rates to provisions like forum-selection clauses.  Cf. Marcus v. AT&T Corp., 138 F.3d 46, 63 (2d Cir. 1998) ("Unless knowledge of the filed [tariff] rate were presumed as a matter of law, carriers could undermine the filed rate doctrine by intentionally quoting lower rates to favored customers.").[7]  Accordingly, the Court declines to do so here.

b.      Scope of Arbitration Agreement

The at-issue arbitration clause is narrow in scope—it mandates arbitration for only those "dispute(s) under the" Bill of Lading, unaccompanied by any of the traditional expansive phrases like "related to" or "in connection with," and is thus the "equivalent" of the "arising under" arbitration clauses that must be construed narrowly.  See ACE Cap. Re Overseas LTD. v. Cent. United Life Ins. Co., 307 F.3d at 33.

Accordingly, BRM's breach-of-contract and fraud claims against All-Ways can be arbitrated only if the underlying factual allegations supporting each claim suggests the claim requires the parties' interpretation of or performance under the Bill of Lading, which is the case here.

First, BRM's breach-of-contract claim against All-Ways arises out of its interpretation of All-Ways's contractual obligations under the Bill of Lading to release the Goods and share in any excess profits from selling the Goods—and thus is easily a "dispute under the Bill of

---

[7]      In Aluminum Prod. Distributors, Inc. v. AAACon Auto Transp., Inc., 404 F. Supp. 1374, 1376 (W.D. Okla. 1975), aff'd, 549 F.2d 1381 (10th Cir. 1977), the court concluded as a matter of law following a bench trial that the arbitration provisions in a bill of lading were "invalid, void, and unenforceable" in part because the carrier's filed tariff did not include the clause.  But that conclusion was not determinative, as the court also addressed myriad additional procedural deficiencies in the arbitration provisions, such as "requir[ing] the strictest rules of evidence [and] limit[ing] the power of the arbitrator to strictly enforce the provisions of defendant's contract," that made the bill of lading "grossly unfair to plaintiff on its face."  Id.

Lading" that requires arbitration.

Second, BRM's fraud claim is inextricably intertwined with All-Ways's performance under the Bill of Lading, such that it must be considered a "dispute under the Bill of Lading." That is, BRM alleges All-Ways exercised a maritime lien over the Goods "pursuant to its [Bill of Lading]" (Doc. #13 ¶ 20); All-Ways deceived BRM into believing it would release the Goods to BRM once All-Ways received payment on its outstanding debts; and finally BRM relied upon these representations before executing the Purchase Agreement and becoming a "Merchant" under the terms of the Bill of Lading.  In other words, according to BRM, All-Ways falsely represented that if BRM became a party to the Bill of Lading, it would complete performance under the Bill of Lading and release the Goods to BRM.  Cf. AXA Versicherung AG v. N.H. Ins. Co., 708 F. Supp. 2d 423, 431 (S.D.N.Y.) (fraudulent inducement claim found to be outside scope of narrow arbitration clause mandating arbitration for disputes "arising out of the interpretation" of a contract because the party seeking arbitration "[could not] point to any interpretative dispute with respect to any contractual term that forms the bases of the allegations that constitute [the] fraudulent inducement claim"), aff'd, 391 F. App'x 25 (2d Cir. 2010) (summary order).

Accordingly, All-Ways's motion to compel arbitration with respect to BRM's breach-of-contract and fraud claims against All-Ways must be granted.

D.    Stay of Proceedings Pending Arbitration

All-Ways requests that arbitration be "compelled," but it does not clearly state a request, one way or the other, on the disposition of the instant action pending the conclusion of arbitration.

The Court concludes a stay is appropriate.

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). Although courts in this Circuit are now "split on whether a stay is required even if no party requests one," Bissonnette v. LePage Bakeries Park St., LLC, 33 F.4th 650, 659 (2d Cir. 2022), it is well settled that a district court "has discretion whether to stay or dismiss [an] action under the FAA," particularly when "the efficacious management of court dockets reasonably requires such intervention." Zambrano v. Strategic Delivery Sols., LLC, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016).

Here, the Court concludes that even if it were not required to stay the instant litigation, a stay is appropriate to move the parties' disputes "out of court and into arbitration as quickly and as easily as possible." Katz v. Cellco P'ship, 794 F.3d at 346. "A stay would also allow the Court, at a later stage, to address any claim by Plaintiffs that they were not able to vindicate all their statutory rights due to costs or fees imposed on them in arbitration." Zambrano v. Strategic Delivery Sols., LLC, 2016 WL 5339552, at *10.

Accordingly, the Court stays this action as to All-Ways pending the arbitration of BRM's claims against All-Ways.[8]

III.   DRE's Motion to Dismiss in Favor of Missouri Action

DRE argues BRM's claims against it must be dismissed, or, in the alternative, transferred to the first-filed Missouri Action currently pending in the Western District of Missouri.

The Court agrees that dismissal is appropriate.

---

[8]   As discussed in more detail below, the claims against DRE will be dismissed, such that "all of the claims [that remain in this] action [will] have been referred to arbitration," which further supports a stay in this case. See Katz v. Cellco P'ship, 794 F.3d at 347.

The "first filed rule" provides that a court may dismiss a case that is duplicative of an earlier-filed federal court action.  First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) ("Where there are two competing lawsuits, the first suit should have priority."). The rule aims to "avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." Marshak v. Reed, 2000 WL 33152076, at *2 (E.D.N.Y. Oct. 17, 2000).  For the rule to apply, the "claims, parties, and available relief must not significantly differ between the actions," although "the issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests." Oleg Cassini, Inc. v. Serta, Inc., 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012).

The presumption of dismissal under the "first filed rule" may be rebutted when "the 'balance of convenience' favors the second-filed action."  Emp's Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008).[9]  "[T]he factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." Id.  Those factors are "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."  Id.

---

[9]     The presumption can also be rebutted when "special circumstances warrant giving priority to the second suit."  Emp's Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d at 275. The term "special circumstances" means "manipulative or deceptive behavior on the part of the first-filing plaintiff."  N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).  Neither BRM nor the Court has identified any such circumstance.

However, "[t]he [above] calculus changes . . . when the parties' contract contains a valid forum-selection clause." <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct.</u>, 571 U.S. 49, 63 (2013).  In such a case, "the plaintiff's choice of forum merits no weight," nor do "private-interest factors" such as the convenience of the parties or their witnesses. <u>Id</u>. at 63–64.  Instead, courts look to "public-interest factors" such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id</u>. at 62 n.6.  "[I]n all but the most unusual cases, . . . the interest of justice is served by holding parties to their bargain." <u>Id</u>. at 66.

The first-filed rule applies here because DRE commenced the Missouri Action before BRM commenced the instant action, and both actions arise out of the parties' dispute under the Purchase Agreement over the Goods.  Moreover, BRM does not dispute that the Purchase Agreement incorporates by reference a Missouri forum-selection clause that accords exclusive jurisdiction to "the state or federal courts of Jackson county, state of Missouri" over "any and all disputes in connection with the [Purchase] [A]greement."  (Purchase Agreement Terms at ECF 21 ¶ 20.1).

Applying this rule, BRM has failed to show that the balance of convenience convincingly favors this action, particularly in light of the Missouri forum-selection clause.  To the contrary, even absent the forum-selection clause, the balance of factors "convincingly" favors deferring to the Missouri Action because BRM's fraud and breach-of-contract claims against DRE in the instant case are virtually identical to BRM's counterclaims against DRE in the Missouri Action, and it would be most efficient and convenient for the parties to litigate all such claims in a single forum.

BRM seeks refuge in the Bill of Lading, which, as discussed above, mandates that all "suits" under the Bill of Lading be brought in the Southern District of New York.  (B/L Terms at ECF 27 ¶ 15).  But even assuming BRM <u>could</u> bind DRE to the Bill of Lading, BRM has not adequately explained why that forum-selection clause would control over the contract DRE allegedly breached and under which BRM files suit:  the Purchase Agreement, which contains no reference, implied or otherwise, to the Bill of Lading.

Accordingly, BRM's claims against DRE must be dismissed in favor of the Missouri Action.

**CONCLUSION**

The motions to dismiss are GRANTED IN PART and DENIED IN PART.

All-Ways's motion to compel arbitration is GRANTED.  BRM and All-Ways are ORDERED to arbitrate their dispute pursuant to the Bill of Lading.

DRE's motion to dismiss in favor of the Missouri Action is GRANTED.

The motions to dismiss are otherwise DENIED.

The Clerk is instructed to terminate DRE Health Corporation from the action.

The Clerk is instructed to terminate the motions.  (Docs. ##22, 25).

The Clerk is further instructed to administratively close this case, without prejudice to either BRM or All-Ways moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[10]

Dated: July 14, 2022
      White Plains, NY

                                          SO ORDERED:

                                          Vincent L. Briccetti
                                          United States District Judge

---

[10]    See Zimmerman v. UBS AG, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), appeal dismissed, 789 F. App'x 914, 915–16 (2d Cir. 2020) (summary order) ("The district court's administrative closure of the case does not constitute a final decision:  there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").